IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SUSAN L. HERTZBERG (1) | No. 6:22-CR-00003-JDK-JDL-1 |

**DEFENDANT SUSAN HERTZBERG'S RESPONSE TO GOVERNMENT'S NOTICE**

Ms. Hertzberg intends to argue at summation that the government has failed to prove beyond a reasonable doubt that she had knowledge of or willfully joined any conspiracy to pay unlawful kickbacks. Ms. Hertzberg's argument will draw on evidence in the record about her own conduct and the information that was presented to her by others, as well as inferences that can reasonably be drawn by the jury from that record. As the government has been aware for nearly a year, and as Ms. Hertzberg explicitly stated in a motion response months prior to trial, among that evidence is evidence that Ms. Hertzberg involved legal counsel in the Little River relationship and hospital business more generally. Indeed, the government itself chose to introduce those issues into this trial in its opening statement and in its direct examinations, in an apparent attempt to establish willfulness. Ms. Hertzberg takes a different view than the government about the reasonable inferences that can be drawn from those facts that are now in the record, and is constitutionally entitled to ask the jury to draw those reasonable inferences.

Contrary to the government's apparent fear, Ms. Hertzberg has no intention of arguing or suggesting that she sought legal advice about the physician remuneration arrangements at issue in this case, or acted in accordance with any such advice. Indeed, such an argument would contradict her consistent defense, which is that she never knew about those arrangements in the first place.

The cases cited by the government are thus off-point for a host of reasons. Most deal with the propriety of specific jury instructions, or the admissibility of proposed evidence, rather than efforts by the prosecution to restrict defense argument at summation. Several are civil cases, where a defendant's constitutional right to liberty was not at issue. And even the one or two that actually address the propriety of defense argument deal with the scenario that is not presented here, in which a defendant seeks to argue, misleadingly, that he relied on advice of counsel that was in fact never provided. The government cites no case—and of course cannot, because the result would be unconstitutional—in which a court precluded a criminal defendant from arguing reasonable inferences about her own conduct, and the information actually presented to her, in support of an argument that she acted in good faith and the government failed to prove willfulness. The Court likewise already recognized this right at the charge conference. Tr. 5871:18-25 ("I'm leaving out the good-faith instruction and I will allow the Defendants to argue basically these statements with respect to the evidence in their closings. . .").

Because the government has been on notice of this issue since before trial, its request should be denied as waived or untimely. In the alternative, it should be denied on the merits.

I.   **The Court Should Deny the Government's Request As Untimely.**

The government seeks to limit Ms. Hertzberg's ability to make arguments based on record evidence on an issue that it has been aware of for months. In Ms. Hertzberg's response to the government's *Motion To Compel Defendants To Disclose Intent To Raise Advice Of Counsel Or Good Faith Defenses*, ECF No. 467, Ms. Hertzberg expressly argued that a defendant may introduce the role attorneys played to support a good faith defense without asserting the advice-of-counsel defense. *See* ECF No. 501 at 8-9. Notwithstanding that they were put on notice regarding Ms. Hertzberg's position, the government made no motion to exclude that type of

2

evidence at trial.  To the contrary, the government *itself* raised Ms. Hertzberg's hiring of Robert Rossi and reliance on the role played by Luke Albrecht in its opening statement. Tr. 263:4-18. Likewise, it elicited (among other things) testimony from Jeff Parnell regarding his (lack of) awareness of a legal opinion covering the contract between Boston Heart and Little River; Lapin's testimony that he asked for outside counsel review of the potential joint venture between Boston Heart and Little River; additional hearsay testimony from Jack Geren regarding the same; and testimony from Rossi about his role in responding to questions about MSOs.  Tr. 1949:21-1950:4; *id.* at 3141:1-3142:8; *id.* at 3873:23-74:1; *id.* at 2500:1-5, 2528:8-2532:25.   Given the government's delay in raising its request until after the record has effectively closed, and the government's own role in introducing certain of the factual points at issue in an attempt to argue that it *has* established willfulness, the government may not now properly seek to preclude Ms. Hertzberg from fair argument about facts in the record.  Accordingly, the government's motion should be rejected as untimely, or as affirmatively waived.

    **II.**    **Ms. Hertzberg Is Constitutionally Entitled to Argue Good Faith Based on Reasonable Inferences from the Evidentiary Record.**

Under the Due Process Clause of the Fifth Amendment and the Sixth Amendment right to present a defense, "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  This right is not diminished at the defense's closing argument, which the Supreme Court has long since recognized as "a basic element of the adversary factfinding process in a criminal trial." *Herring v. New York*, 422 U.S. 853, 858 (1975).  The role of an attorney "in closing argument is 'to assist the jury in analyzing, evaluating and applying the evidence.'" *United States v. Thompson*, 482 F.3d 781, 785 (5th Cir. 2007).  In fulfilling that role,

3

"[i]t is well established that an attorney may recite to the jury those inferences and conclusions he wishes them to draw from the evidence so long as they are based on the evidence." *United States v. Webb*, 950 F.2d 226, 230 (5th Cir. 1991). Ms. Hertzberg is therefore entitled to reference facts in evidence at closing to draw the inference that she acted in good faith, including facts relevant to her own conduct, and the information available to her, regarding the involvement of counsel in the Little River business. Ms. Hertzberg does not intend to argue that counsel provided any legal advice regarding the physician remuneration arrangements that the government alleges existed in this case.

"[A] good-faith defense is based on a 'lack of knowledge of wrongdoing' and an absence of intent to participate in the offense; it does not require advice of counsel." *United States v. Hagen*, 542 F. Supp. 3d 515, 518 (N.D. Tex. 2021) (quoting *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002)). As the Fifth Circuit has recognized, a defendant may raise a good faith defense that relies in part on acknowledging the involvement of counsel without raising the advice-of-counsel defense. *See United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002) (citing *United States v. White*, 887 F.2d 267, 270 (D.C. Cir. 1989)) (holding "that [the defendant's] good faith defense was not based on advice of counsel, but rather on a simple lack of knowledge of the wrongdoing and absence of intent to participate in it"); *see also White*, 887 F.2d at 270 ("[A]cknowledgement that one's attorney was present during a conversation is not equivalent to affirmative reliance on his advice that one's action is legal."). Even "[i]f [a defendant] is not able to furnish sufficient evidence to warrant an instruction on the good faith reliance on counsel defense, any evidence of attorney advice presented might be relevant to the issue of specific intent." *United States v. Okun*, No. 3:08-CR-132, 2009 WL 414009, at *6 (E.D. Va. Feb. 18, 2009). As Judge Abrams held in ruling on a motion in limine to limit the admission of such evidence, "[a]

4

defendant may argue that attorneys who drafted or reviewed documents related to the charged [misconduct] did not inform him of the illegality . . . and that the defendant took comfort in the attorney silence." Tr. of Oral Arg. at 84, *United States v. Tagliaferri*, No. 1:13-cr-115-RA-GWG (S.D.N.Y. Aug. 5, 2014), ECF No. 63.

Certain of the evidence that Ms. Hertzberg may cite in her argument that the government failed to prove willfulness relates to the involvement of lawyers. By way of example, Ms. Hertzberg may argue that if she believed the Little River arrangement involved illegal kickbacks, and intended to join a conspiracy to pay such kickbacks, she would not have hired a former health care fraud prosecutor as Boston Heart's Vice President of Compliance. In response to the government's elicitation of testimony—presumably designed to bolster its willfulness argument—that Mr. Rossi was told that he should have been included at the Framingham meeting, Tr. 2667:7-20, she may argue that Mr. Rossi's boss, Luke Albrecht, was in fact included, GX-250. Ms. Hertzberg is similarly entitled to rely on information available to her and that informed her state of mind, including that Mr. Rossi was cc'd on the June 3, 2016, email from Michael Ivers. *See* GX-412. Finally, to the extent that the government has alleged that Ms. Hertzberg should have been aware of red flags based on specific information presented to her, Ms. Hertzberg can fairly point out the numerous other executives, including both lawyers and non-lawyers alike, who were simultaneously provided with the identical information and also raised no red flags. This evidence, and similar evidence, tends to rebut the government's contention that Ms. Hertzberg acted willfully.

Contrary to the government's notice, referencing these facts during closing argument will not confuse the jury or be unfairly prejudicial to the government.[1] Due to the Court's Rule 502(d)

---

[1] The government also contends that Ms. Hertzberg's good faith defense could result in the jury believing Boston Heart's counsel "implicitly or explicitly 'blessed' the legality of all aspects of an arrangement." Gov't Notice 3

order, the government has all of the relevant communications. None of those inferences misleadingly suggest that Ms. Hertzberg received legal advice that is not in the record. And Ms. Hertzberg will make abundantly clear to the jury that neither she nor legal counsel were in a position to bless aspects of an arrangement they did not know about. Rather, the relevant facts are "simply evidence of good faith, a relevant consideration in evaluating a defendant's scienter," *Howard v. S.E.C.*, 376 F.3d 1136, 1147 (D.C. Cir. 2004). While the trial court "has wide discretion to control the material presented by counsel in closing argument, *United States v. Taylor*, 680 F.2d 378, 380 (5th Cir. 1982), it is essential that parties have the opportunity "to present information in a manner that is comprehensible to [the factfinder]" and not so restricted that "the essence of the trial itself has been destroyed," *Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996). Precluding Ms. Hertzberg from arguing good faith in connection with the aforementioned interactions will only serve to prohibit her from advancing a defense she is constitutionally entitled to make.

The cases cited in the government's notice are inapposite. First, most of them relate to the admissibility of evidence or the propriety of jury instructions, which are different questions. *See, e.g., United States v. Greenspan*, 923 F.3d 138, 147 (3d Cir. 2019); *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017); *Gruber v. Gilbertson*, 628 F. Supp. 3d 472, 491 (S.D.N.Y. 2022); *United States v. Donofrio*, No. 5:19-CR-25-05-RWS, slip op. at 16 n.2 (E.D. Tex. Sept. 12, 2023),

---

(quoting *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013)). As discussed above, there is no such risk here. That said, the government's line of reasoning suggests a continued intention by the government to argue that the "client bill" agreements *themselves* were unlawful. As explained in Ms. Hertzberg's notice filed on November 22, 2023, the government should be precluded from making such arguments at closing primarily because it would amount to improper Rule 404(b) evidence and/or constitute constructive amendment of the Indictment. The government should also be precluded from making such an argument because—as the government well knows—the validity of the client bill arrangement itself actually *was* reviewed and "blessed" by counsel. Ms. Hertzberg chose not to adduce that evidence in the case because the legality of the agreement itself is not part of the Indictment.

ECF No. 954. Second, several are civil, rather than criminal cases, in which different due process standards apply. Third, as a substantive matter, in many of the referenced cases the defendant sought to advance an "advice of counsel" defense, rather than a good faith defense based on facts in the record. *See United States v. Quinones*, 417 F. App'x 65, 67 (2d Cir. 2011) (affirming the "district court's denial of the *requested* jury instruction on the advice of counsel defense" (emphasis added)); *Gruber*, 628 F. Supp. 3d at 491 (noting defendant sought to introduce "advice he received from [company's] then-general counsel"); *Donofrio*, No. 5:19-CR-25-05-RWS, slip op. at 16 n.2 ("Here, Defendant specifically argued advice-of-counsel. Defendant points to communications between himself and his attorney, and he testified regarding his reliance on counsel and the potential legality of the contracts and commission agreements."). Those cases are animated by the concern that a defendant is not entitled to an advice of counsel instruction—which *negates* intent—if he or she does not meet the factual predicates for that powerful instruction. As noted above, Ms. Hertzberg will not advance an advice-of-counsel defense, because she did not know about any MSO payments and never sought legal advice about them.

Moreover, some of the government's cases, if anything, actually weigh against the relief it seeks. For example, in *United States v. Greenspan*, the Court of Appeals held that the district court erred by, among other things, excluding certain testimony about the defendant's lawyer's advice; and limiting the scope of an advice-of-counsel defense. 923 F.3d at 147-49. In *United States v. Blagojevich*, 794 F.3d 729, 739 (7th Cir. 2015), the court held that a good faith instruction was unnecessary with respect to statutes in the indictment that did not require willfulness, but simultaneously noted that a good faith instruction was *proper* for criminal "counts[] which have an intent requirement" of willfulness, *id.*, as is the case here. In *United States v. Scully*, the Second Circuit found that the defendant was entitled to a new trial because the district court erred in

7

excluding testimony that supported the advice-of-counsel defense. 877 F.3d at 476. Neither case stands for the proposition that an advice-of-counsel defense is the one and only way a defendant may ask a jury to consider the involvement of legal counsel at closing. As noted above, a jury may draw inferences from evidence of attorney involvement that demonstrate the defendant acted without awareness of wrongdoing or intent and thus establish the good faith defense. *See Okun*, 2009 WL 414009, at *6.

Finally, the government's reference to certain other cases mischaracterizes the relevant considerations the court must weigh in deciding whether to allow the presentation of the good faith defense or instruction. In *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013), for example, the court repeatedly expressed concern that the defendant was attempting to assert that lawyers affirmatively "blessed" transactions or disclosures through their mere presence, *id.* at 684, which the court found "would likely confuse the jury," *id.* Accordingly, the court limited argument that placed "undue focus" on such evidence while still not "requir[ing] an unnatural avoidance of identifying" lawyers who were involved. *Id.* at 684-85. Here, Ms. Hertzberg does not seek to make any affirmative argument that counsel blessed any transactions, documents, or conduct. Rather, she seeks to merely note their involvement in explaining how her conduct demonstrates she lacked knowledge or intent.

### III. Conclusion

For the foregoing reasons, Ms. Hertzberg respectfully asks that the Court deny the government's requested relief and allow her to present a complete good faith defense at closing.

Respectfully submitted,

/s/ David Bitkower (by perm. Wesley Hill)
David Bitkower – Lead Attorney
*Pro Hac Vice*
Bar Nos.: N.Y. 4190096; D.C. 198596
Jenner & Block
1099 New York Avenue, NW, Suite 900
Washington, D.C. 20001
dbitkower@jenner.com

Keisha N. Stanford
*Pro Hac Vice*
Bar Nos.: CA 274166; D.C. 1015268
Jenner & Block
1099 New York Avenue, NW, Suite 900
Washington, D.C. 20001
kstanford@jenner.com

Shreve Ariail
*Pro Hac Vice*
Bar No.: N.Y. 4155339
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, D.C. 20001
Tel: (202) 639-6871
sariail@jenner.com

Wesley Hill
Tex. Bar. No. 24032294
WARD, SMITH & HILL, PLLC
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
Fax: (903) 757-2323
wh@wsfirm.com

**CERTIFICATE OF SERVICE**

I certify that on November 24, 2023 a copy of the foregoing document was filed via the court's CM/ECF system and thereby served electronically on all counsel of record.

/s/ David Bitkower
David Bitkower

9